IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| MARCUS KING, | ) | Civil Action No. 3:12-381-MGL-JRM |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| CAROLYN W. COLVIN, ACTING | ) | |
| COMMISSIONER OF SOCIAL SECURITY,[1] | ) | |
| | ) | |
| Defendant. | ) | |
| ―――――――――――――――――― | ) | |

This case is before the Court pursuant to Local Civil Rules 73.02(B)(2)(a) and 83.VII.02, et seq., DSC, concerning the disposition of Social Security cases in this District. Plaintiff brought this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) to obtain judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying his claims for Disability Insurance Benefits ("DIB"), and Supplemental Security Income ("SSI").

## ADMINISTRATIVE PROCEEDINGS

Plaintiff filed applications for DIB and SSI on April 6, 2009, alleging disability as of March 5, 2009. Tr. 15, 143-151. Plaintiff's claims were denied initially and upon reconsideration. Plaintiff then requested a hearing before an Administrative Law Judge ("ALJ").  A hearing was held on November 22, 2010, at which Plaintiff, and a vocational expert ("VE") appeared and testified. Tr. 59-94. The ALJ issued a decision dated February 11, 2011, finding that Plaintiff was disabled from March 5, 2009 through November 10, 2010.  The ALJ also found that medical improvement occurred

―――――――――――――――――――

[1]Carolyn W. Colvin became the Acting Commissioner of Social security on February 14, 2013.  Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Carolyn W. Colvin should be substituted for Commissioner Michael J. Astrue as Defendant in this action.

as of November 11, 2010, and Plaintiff was not disabled beginning on November 11, 2010 because, based on the testimony of the VE, work exists in that national economy which Plaintiff can perform.

Plaintiff has an ninth grade education and past relevant work as a truck driver and mechanic's helper. Tr. 20, 28, 82, 174, 187. Plaintiff alleges disability since March 5, 2009, due to obesity, disorder of the back, disorder of the joint and status post surgery to his right lower extremity. Tr. 19, 173.

The ALJ found (Tr. 18-29):

1. The claimant met the insured status requirements of the Social Security Act as of March 5, 2009, the date the claimant became disabled.

2. The claimant has not engaged in substantial gainful activity since March 5, 2009, the alleged onset date (20 CFR 404.1520(b), 404.1571 *et seq.,* 416.920(b) and 416.971 *et seq.*).

3. At all times relevant to this decision, the claimant has had the following severe impairments: obesity, disorder of the back, disorder of the joint and status post surgery to right lower extremity (20 CFR 404.1520(c) and 416.920(c)).

4. From March 5, 2009 through November 10, 2010, the period during which the claimant was disabled, the claimant did not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 416.920(d)).

5. After careful consideration of the entire record, I find that, from March 5, 2009 through November 10, 2010, the claimant had the residual functional capacity to perform reduced sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a). I find the claimant could lift/carry 10 pounds frequently and 10 pounds occasionally. He was able to stand and walk for one hour in an eight hour workday, and he was able to sit for six hours of an eight hour workday. He could push and pull with this right lower extremity on an occasional basis. He could never climb ropes, ladders and scaffolds. He could occasionally climb, balance, stoop, and crouch. He could never kneel with his right lower extremity, and could frequently kneel with the left

2

lower extremity. The claimant could never crawl. The claimant would have missed work in the sole discretion of the claimant that would occur on a frequent basis and would amount to at least four days per month.

6. From March 5, 2009 through November 10, 2010, the claimant was unable to perform past relevant work (20 CFR 404.1565 and 416.965).

7. The claimant was born on February 10, 1977 and was 32 years old, which is defined as a younger individual age 18-44, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8. The claimant has a limited education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9. The claimant's acquired job skills do not transfer to other occupations within the residual functional capacity assessed for the period from March 5, 2009 through November 10, 2010 (20 CFR 404.1568 and 416.968).

10. From March 5, 2009 through November 10, 2010, considering the claimant's age, education, work experience, and residual functional capacity, there were no jobs that existed in significant numbers in the national economy that the claimant could have performed (20 CFR 404.1560(c), 404.1566, 416.960(c), and 416.966).

11. The claimant was under a disability, as defined in the Social Security Act, from March 5, 2009 through November 10, 2010 (20 CFR 404.1520(g) and 416.920(g)).

12. Medical improvement occurred as of November 11, 2010, the date the claimant's disability ended (20 CFR 404.1594(b)(1) and 416.994(b)(1)(i).

13. Beginning on November 11, 2010, the claimant has not had an impairment or combination of impairments that meets or medically equals one of the impairments listed in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1594(f)(2) and 416.994(b)(5)(i)).

14. After careful consideration of the entire record, I find that, beginning November 11, 2010, the claimant has had the residual functional capacity to perform [] a reduced range of sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a). I find the claimant could lift/carry 10 pounds frequently and 10 pounds occasionally. He was

3

able to stand one hour in addition walk for one hour in an eight hour workday, and he was able to sit for six hours of an eight hour workday. He could push and pull with his right lower extremity on an occasional basis. He could never climb ropes, ladders and scaffolds. He could occasionally [] climb, balance, stoop, and crouch. He could never kneel with his right lower extremity, and could frequently kneel with the left lower extremity. The claimant could never crawl.

15. The medical improvement that has occurred is related to the ability to work (20 CFR 404.1594(b)(4)(i) and 416.994(b)(1)(iv)(A)).

16. Since November 11, 2010, the claimant's age category has not changed (20 CFR 404.1563 and 416.963).

17. Beginning on November 11, 2010, the claimant has been unable to perform past relevant work (20 CFR 404.1565 and 416.965).

18. Beginning on November 11, 2010, transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

19. Beginning on November 11, 2010, considering the claimant's age, education, work experience, and residual functional capacity, the claimant has been able to perform significant number of jobs in the national economy (20 CFR 404.1560(c), 404.1566, 416.960(c), and 416.966).

20. The claimant's disability ended on November 11, 2010 (20 CFR 404.1594(f)(8) and 416.994(b)(5)(vii)).

The Appeals Council denied the request for review in a decision issued December 20, 2011.

Tr. 1-3. Accordingly, the ALJ's decision became the final decision of the Commissioner. Plaintiff

filed this action in the United States District Court on February 9, 2012.

## **STANDARD OF REVIEW**

The only issues before this Court are whether correct legal principles were applied and

whether the Commissioner's findings of fact are supported by substantial evidence. Richardson v.

Perales, 402 U.S. 389 (1971); Blalock v. Richardson, 483 F.2d 773 (4th Cir. 1972). Under 42 U.S.C. §§ 423(d)(1)(A) and 423(d)(5) pursuant to the Regulations formulated by the Commissioner, Plaintiff has the burden of proving disability, which is defined as "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. §§ 404.1505(a), 416.905(a).

At issue in this case is whether medical improvement occurred as of November 11, 2010. Medical improvement is defined as "any decrease in the medical severity of [the] impairment(s) which was present at the time of the most recent favorable medical decision" of disability. 20 C.F.R. §§ 404.1594(b)(1), 416.994(b)(1)(i). The determination of "a decrease in medical severity must be based on changes (improvement) in the symptoms, signs and/or laboratory findings associated with [the] impairment(s)." Id.  To determine whether medical improvement has occurred, the severity of the claimant's current medical condition is compared to the severity of the condition "at the time of the most recent favorable medical decision that [claimant was] disabled." Id. Additionally, medical improvement is related to the ability to work if the improvement results in an "increase in [the] functional capacity to do basic work activities." 20 C.F.R. §§ 404.1594(b)(3), 416.994(b)(i)(iii).

There is an eight-part sequential evaluation process for determining if disability continues. This requires the ALJ to consider whether: (1) the claimant is engaging in substantial gainful activity; (2) the claimant has an impairment which meets or equals the severity of an impairment in the Listing of Impairments ("Listings"); (3) there has been medical improvement; (4) the medical improvement is related to the claimant's ability to do work; (5) any exception to the medical improvement standard applies; (6) Plaintiff's current impairment or combination of impairments is

severe; (7) Plaintiff's RFC will allow him or her to perform past relevant work; and (8) other work

exists in the national economy he or she can perform considering age, education, past work

experience, and remaining physical and mental capabilities.  See 20 C.F.R. § 404.1594(a) and (f).[2]

## MEDICAL EVIDENCE

On March 5, 2009, Plaintiff was involved in a head-on collision car accident, in which he

sustained a compression fracture to his lower back at  L1 and a fracture to his right femur. Tr. 235,

237-238. It was noted that Plaintiff was not to bear any weight for eight weeks following his

accident. Tr. 236. On March 6, 2009, Plaintiff underwent an open reduction internal fixation of his

right femur, and was discharged on March 9, 2009. Tr. 246-247.

In April 2009, Plaintiff was examined by physician assistant ("PA") David S. Lewis at

Orthopaedic Associates for complaints of severe knee pain.  Plaintiff reported that the fracture site

of his femur was non-tender and was not a source of his pain, and that he had not been bearing any

weight on his right knee. Tr. 239.  An MRI of Plaintiff's right knee revealed that his ACL and PCL

were intact. Tr. 283.  On April 27, 2009, an x-ray of Plaintiff's lumber spine revealed that his L1

compression fracture was stable. Tr. 327. Plaintiff returned to Orthopaedic Associates in May 2009

with complaints of right leg pain, and saw Dr. Gerald Rollins. Dr. Rollins noted that an x-ray of

Plaintiff's right leg revealed good positioning of the rod in his right leg, with no healing at that time

as it was only six weeks post-injury.  Upon physical examination, Dr. Rollins noted that Plaintiff had

quad function, that he did not believe that Plaintiff was doing much in the way of working on

---

[2]There are seven steps used to determine whether medical improvement occurred in an SSI
claim (which are substantially similar to steps two through eight above), rather than the eight of a
DIB claim.  For an SSI claim, the performance of substantial gainful activity is not a factor used to
determine if a claimant's disability continues.  See 20 C.F.R. § 416.994(b)(5).

extension exercises, and Plaintiff was taking more pain medicine than he (Dr. Rollins) preferred. Tr. 297-298. Dr. Rollins reduced Plaintiff's medications, which Dr. Rollins noted angered Plaintiff. Tr. 296-298.

Plaintiff returned to Dr. Rollins in August 2009 with complaints of muscle weakness, back pain, and stiffness. Tr. 291. Dr. Rollins noted that Plaintiff's gait was normal; he had reasonable range of motion of his back; his right leg was not giving him any trouble; and his left leg had some deterioration in the knee. Dr. Rollins noted that x-rays of Plaintiff's right femur showed only a little bit of bony healing with probable nonunion of his right femur fracture, and he suggested a bone growth stimulator. Tr. 291.

In September 2009, Plaintiff told Dr. Rollins that he was not having much of a problem with his right femur itself, but was having knee pain. Physical examination revealed that Plaintiff's right knee had some anterior instability consistent with an ACL deficient knee. Dr. Rollins recommended a knee brace. Tr. 287-289. In an examination later in the month, Dr. Rollins noted that Plaintiff was walking much better while using the ACL brace on his right knee, thought that Plaintiff should get off his crutches, and opined that Plaintiff might need a bone graft to treat what appeared to be a developing femoral nonunion. Tr. 285.

On November 3, 2009, Plaintiff complained to Dr. Rollins about right leg pain. Plaintiff reported that he was doing better with the ACL brace as far as knee pain, but the brace caused thigh pain. Dr. Rollins noted that Plaintiff had walked too soon after surgery and bent a rod screw which had to be replaced. Plaintiff was using crutches to ambulate. Dr. Rollins again noted that x-rays of Plaintiff's right leg indicated that he still appeared to be developing a nonunion of his femur fracture. Tr. 316-317.

On November 5, 2009, Dr. George Chandler, a state agency physician, opined that Plaintiff could lift and/or carry twenty pounds occasionally and ten pounds frequently, stand and/or walk for at least two hours in an eight-hour workday, and sit for about six hours in an eight-hour workday. Tr. 106. He opined that Plaintiff could occasionally climb ramps and stairs; occasionally balance, stoop, kneel, and crouch; never climb ladders, ropes, or scaffolds or crawl; and should avoid even moderate exposure to workplace hazards, such as machinery and heights. Tr. 105-112.

In December 2009, Dr. Rollins formally diagnosed Plaintiff with a nonunion of the fracture in his right femur. At that time, Plaintiff was still using crutches to ambulate with limited weight-bearing on his right leg and an unstable right knee. Dr. Rollins recommended that Plaintiff undergo surgery to replace the hardware in his femur and to perform a bone graft in order to take care of the nonunion. Tr. 314. Plaintiff subsequently underwent surgery on his right leg to repair his nonunion right femur. Tr. 304-305, 310. In December 2009, Plaintiff reported doing pretty well with improved pain level post-surgery . He reported that his prescribed Xanax made him much calmer. X-rays revealed that Plaintiff's hardware appeared to be in good position. Tr. 307-309.

During appointments at Dr. Rollins' office in January and February 2010, Plaintiff reported having some ongoing pain in his right leg, but it was noted that some right leg pain was to be expected at that stage in recovery process. It was also noted that Plaintiff was not ambulatory on his right leg at these examinations. Tr. 342-347. On March 17, 2010, Plaintiff reported that his right thigh was not hurting him so much and the majority of his pain was in his right knee along the joint line. Dr. Rollins noted that Plaintiff's gait was normal; he had no tenderness in his mid-thigh, except to abduct his leg; and he had laxity in his right knee with full extension. Dr. Rollins noted that Plaintiff would need to bear weight on his right leg to test his recovery from the femur fracture;

8

however, Plaintiff had been unable to do so as a result of his problems with knee instability including an ACL tear. Dr. Rollins recommended that Plaintiff see another physician for evaluation of his right ACL. Tr. 339-341.

On April 8, 2010, Plaintiff saw Dr. Mary Black, an orthopedist, for evaluation of his right knee pain and instability. Dr. Black noted that Plaintiff complained of bitter pain all along the anterior aspect of his knee and had not been full weight bearing since his surgery in December 2009. X-rays of Plaintiff's right knee did not reveal any bony abnormality on the knee joint itself. An MRI of Plaintiff's right knee revealed that Plaintiff's ACL was present and did not have a complete tear at that time. Dr. Black concluded that Plaintiff's pain did not correspond with an ACL injury, particularly as Plaintiff was non-weight bearing or minimally toe-touch weight bearing. Dr. Black did not believe ACL reconstruction surgery was appropriate remedy for Plaintiff's right knee condition as she thought "there is a lot more going on than just some instability." She did offer a cortisone injection, which Plaintiff refused. Tr. 336-338.

Plaintiff underwent an arthoscopic examination of his right knee on April 29, 2010, but the scope did not reveal "all that much wrong" with his knee. Dr. Rollins noted that it was hard to understand why Plaintiff was having that much discomfort in his knee. Tr. 328-329, 330. In June 2010, Plaintiff reported that his femur was doing okay, but that he continued to experience right knee pain, which required him to use crutches to ambulate. Plaintiff reported that he had recently undergone an injection in his right knee, which made him feel much better and he was able to walk for about two days afterwards. Examination revealed that Plaintiff's gait was normal; his femur was sufficiently healed such that he could perform a straight leg raise; his knee motion was fairly good; and he was neurologically intact in his lower extremity. X-rays indicated that Plaintiff's right femur

was probably healed, but there was no explanation for the pain he was having in his knee. It was noted that Plaintiff would likely benefit from a right total knee arthroplasty. Tr. 319-321.

On July 8, 2010, Plaintiff underwent total joint replacement surgery on his right knee. Tr. 322-323. Following his surgery, Plaintiff was released to ambulate with full weight bearing on both lower extremities. Tr. 326. Approximately two weeks later, Plaintiff reported that his knee was doing well with only some pain in his right calf post-surgery. He was participating in physical therapy. On physical examination, it was noted Plaintiff was able to get almost ninety degrees of flexion and almost full extension of his right knee. It was noted that Plaintiff was not having the pain in his knee that he was once having; was able to walk through the office; and he did well walking, except for the limiting pain in his right calf area. Tr. 351-353.

On September 1,  2010, Plaintiff complained of some discomfort in the back of his knee. Plaintiff stated that he needed some more pain medication, which Dr. Rollins indicated was "the same line that we have heard over and over in this gentleman." Physical examination revealed that Plaintiff's knee looked good and that he had full extension with eighty degrees of flexion. Dr. Rollins stated that Plaintiff did not tolerate pain well and Plaintiff needed to be pushed in physical therapy. Tr. 348-350.

On November 3, 2010, Plaintiff complained to PA Lewis that he had hyperextended his right knee when going down the stairs about a month and a half earlier.  Plaintiff reported that he had been experiencing some posterior knee pain as well as a little bit of popping and looseness in his right knee.  It was noted that Plaintiff's knee was not particularly loose, his components did not feel loose, and he had some posterior knee pain with palpation.  No x-rays were taken and based on the examination, it was thought that Plaintiff had a probable strain of his PCL. Plaintiff was again

encouraged to participate in physical therapy exercises. The treatment note also indicated that Plaintiff was given a good number of pain medications, it was his "last refill of pain medications," and he should not need any further refills.   Tr. 355-356.

Dr. Rollins completed a form regarding Plaintiff's residual functional capacity ("RFC") on November 10, 2010. He indicated that Plaintiff's pain was moderate and was likely to increase with physical activity. Dr. Rollins opined that Plaintiff could lift up to twenty pounds occasionally and ten pounds frequently, could stand for one hour in an eight-hour workday, could walk for one hour in an eight-hour workday, and could sit for six hours in an eight-hour workday. Dr. Rollins opined that Plaintiff could work for a total of eight hours in an eight-hour workday. He also opined that Plaintiff was likely to be absent from work more than four times a month due to his impairment. Tr. 357-359.

On December 1, 2010, Plaintiff complained of laxity in his right knee with pain.  PA Lewis noted that on physical exam, Plaintiff did not have any posterior cruciate laxity in his right knee. Tr. 365.  He thought that, had Plaintiff injured his PCL during his prior hyperextension injury, Plaintiff would be expected to have some laxity in his right knee. It was noted that Plaintiff had some pain in the medial portion of his knee with palpation, but that the remainder of the examination was normal.  PA Lewis thought that Plaintiff's "poly" might be too small and recommended that Plaintiff get a second opinion from Dr. Funderburk with regard to his knee pain. Tr. 363-365.  Plaintiff reported that his disability claims was denied and that there was a note from Orthopaedic Associates stating he could work eight hours a day.  PA Lewis wrote:

> I know, certainly, that neither myself or nor Dr. Rollins, who have been his two main care providers, would have said that [Plaintiff] could work at this point.  He is certainly not able to work 8 hours per day.  I certainly know that he does not have the

> physical capacity to do this....He is not ready at this point to go back to work. I am
> not sure when this might happen.

Tr. 365.

On December 8, 2010, Plaintiff sought a second opinion regarding his knee from Dr. Michael Funderburk, an orthopedist. Physical examination indicated that Plaintiff had a stiff knee, and that the greatest limitation was motion in flexion and extension. Dr. Funderburk recommended that Plaintiff undergo a bone scan to evaluate the status of his bone as well as a probable surgery (open revision) Tr. 360-362. In late December 2010, an x-ray of Plaintiff's right femur revealed that his femur fracture was healed. Tr. 366. An x-ray of Plaintiff's right knee revealed a total knee prosthesis that was in place in normal alignment. Tr. 367.

After the ALJ's decision, Plaintiff submitted additional records to the Appeals Council, as discussed below. On December 30, 2010, Dr. Rollins noted that although Plaintiff did better after his total knee replacement, he had gotten worse in the past couple of months. Examination revealed that Plaintiff had a limitation of flexion of his knee to no more than seventy-five degrees and had a hard time getting into full extension. Dr. Rollins thought that Plaintiff might have a little bit of instability in his knee due to how think the poly was, but that Plaintiff's main problem was the joint restriction in terms of the quad being stuck down to his femur. Dr. Rollins' assessment was right total knee arthroplasty with significant limitation of motion. Dr. Rollins thought that Plaintiff might benefit from lysis of adhesions, possible freeing up of the quad mechanism and his infrapatellar tendon, and considering going to the next thicker poly. Tr. 370-371. Dr. Rollins and Dr. Funderburk performed surgery on Plaintiff on January 14, 2011. A revision of the tibial component was performed and Plaintiff's ten millimeter poly was replaced with twelve millimeter poly. Tr. 372-373.

## HEARING TESTIMONY

At the hearing, Plaintiff testified that he became unable to work after he was involved in a car accident on March 5, 2009. Tr. 67. Plaintiff stated that he experienced pain from the bottom of his knee to his mid-thigh if his toe got caught on something or if he bent his leg the wrong way. Tr. 68. He testified that his pain symptoms were generally between a four and a five on the pain scale on a daily basis. Tr. 74. Plaintiff alleged that he experienced pain in his knee when he was standing on it and while sitting. Tr. 68-69. Plaintiff testified that he was able to sit for about two to three hours before his leg started to hurt, but was unable to sit for long periods of time. Tr. 69, 75. Plaintiff reported that he had been using a cane to ambulate since August 2010. Tr. 72. Plaintiff testified that his activities of daily living included watching television, driving, going to the grocery store, going out to eat, washing dishes, washing and folding clothes, cooking, and visiting with family. Tr. 69, 70, 76-77, 78.

## DISCUSSION

Plaintiff alleges that (for the time period after November 11, 2010): (1) the ALJ failed to consider all of the available evidence; (2) the ALJ erred in refusing to assign any weight to the opinions of his treating physician (Dr. Rollins); (3) there is not substantial evidence[3] to support the ALJ's RFC assessment; (4) the ALJ failed to consider the vocational consequence of pain as required

---

[3]Substantial evidence is:

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."

Shively v. Heckler, 739 F.2d 987, 989 (4th Cir. 1984); Laws v. Celebreeze, 368 F.2d 640, 642 (4th Cir. 1966). It must do more, however, than merely create a suspicion that the fact to be established exists. Cornett v. Califano, 590 F.2d 91, 93 (4th Cir. 1978).

by SSR 96-7p; and (5) the ALJ failed to make a proper credibility determination as required by SSR 96-7p.[4] The Commissioner contends that (1) the ALJ appropriately considered the relevant evidence when making his disability determination; (2) the ALJ reasonably weighed Dr. Rollins' opinions about Plaintiff's RFC; (3) the ALJ's RFC finding was supported by substantial evidence; (4) the ALJ appropriately considered Plaintiff's subjective pain symptoms when making his credibility determination; (5) the ALJ reasonably determined that Plaintiff's testimony was not entirely credible.

A.    Development of Record

Plaintiff alleges that the ALJ did not consider all of the available evidence and thus did not fully and fairly develop the record in determining that Plaintiff was not disabled after November 11, 2010. He argues that the ALJ failed to appropriately consider records submitted following the hearing which showed that Plaintiff's condition was worse than initially believed and that Plaintiff needed another surgery. In particular, he argues that PA Lewis, who worked for Dr. Collins, wrote on December 1, 2010 that he knew that neither himself nor Dr. Rollins would have said that Plaintiff could work at this point. Plaintiff also argues that the ALJ ignored the surgical recommendation (that Plaintiff would need revision surgery) by Dr. Funderburk. He argues that the records indicate that Plaintiff's condition had not improved to the level assessed by the ALJ. The Commissioner contends that the ALJ appropriately considered the relevant evidence of record when making his disability determination.

---

[4]Although Plaintiff references SSR "97-7p," this appears to be a clerical error. He appears instead to be referring to SSR 96-7p (" POLICY INTERPRETATION RULING TITLES II AND XVI: EVALUATION OF SYMPTOMS IN DISABILITY CLAIMS: ASSESSING THE CREDIBILITY OF AN INDIVIDUAL'S STATEMENTS.").

14

Review of the ALJ's decision reveals that the ALJ properly considered the relevant evidence of record when making his disability determination. The ALJ explicitly discussed the records in question (those submitted after the ALJ's hearing). See Tr. 25. The ALJ specifically noted that Dr. Funderburk's assessments included that Plaintiff had a stiff knee, Plaintiff's biggest limitation was motion in flexion and extension, and there might be some play within Plaintiff's knee. He also noted that Dr. Funderburk recommended a bone scan as well as a probable open revision. Tr. 25. The ALJ also recited the details of Plaintiff's appointment with Orthopedic Associates on December 1, 2010. Id. Additionally, the ALJ addressed PA Lewis'[5] opinion and listed his reasons for discounting the opinion. Tr. 26.

B.    Treating Physician

Plaintiff alleges that the ALJ "erred in refusing to assign any weight to the opinions of [his] treating physician [Dr. Rollins]." Plaintiff's Brief at 7. He argues that the ALJ failed to perform the analysis required by 20 C.F.R. § 404.1527 and provided "very little reasoning for rejecting Dr. Rollins' statement that Plaintiff would miss work more than four days per month." Plaintiff's Brief at 8. The Commissioner contends that the ALJ reasonably attributed great weight to Dr. Rollins' opinions about Plaintiff's ability to sit, stand, and walk during an eight-hour workday, but reasonably discounted Dr. Rollins' opinion that Plaintiff would be absent from work more than

---

[5]The ALJ mistakenly refers to PA Lewis as "Dr." Lewis. A physician's assistant, unlike a physician, is not an acceptable treating source. See 20 C.F.R. § 404.1513; SSR 06-03p. PA Lewis is not a treating source whose medical opinion may be entitled to controlling weight. See 20 C.F.R. § 404.1527(a)(2); 20 C.F.R. § 404.1513. Opinions from other medical sources, however, may reflect the source's judgment about a claimant's symptoms, diagnosis and prognosis, what the individual can do despite the impairment, and physician and mental restrictions. See SSR 06-03p. "[T]he case record should reflect the consideration of opinions from medical sources who are not 'acceptable medical sources' and from 'non-medical sources' who have seen the claimant in their professional capacity." Id.

15

four times a month.[6]  Specifically, the Commissioner argues that the decision to discount the opinion about absenteeism is supported by substantial evidence because that aspect of Dr. Rollins' opinion was not supported by any objective medical evidence of record, Dr. Rollins did not articulate any basis for this restriction, this opinion was inconsistent with other substantial evidence of record, and that medical evidence of record suggested that Plaintiff regularly overstated the extent and severity of pain symptoms.  In his reply brief, Plaintiff argues that the Commissioner improperly offered "presumed" reasons for the ALJ discounting Dr. Rollins' opinions which the ALJ did not offer in his decision.

The medical opinion of a treating physician is entitled to controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record.  See 20 C.F.R. §§ 404.1527 and 416.927; Mastro v. Apfel, 270 F.3d 171, 178 (4th Cir. 2001). Thus, "[b]y negative implication, if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." Craig v. Chater, 76 F.3d 585, 590 (4th Cir. 1996).  Under such circumstances, "the ALJ holds the discretion to give less weight to the testimony of a treating physician in the face of persuasive contrary evidence." Mastro v. Apfel, 270 F.3d at 178 (citing Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir.1992)).

Under § 404.1527, if the ALJ determines that a treating physician's opinion is not entitled to controlling weight, he must consider the following factors to determine the weight to be afforded the physician's opinion: (1) the length of the treatment relationship and the frequency of examinations;

---

[6]The VE testified that missing four days per month would be considered excessive absenteeism and would preclude all gainful employment.  Tr. 84.

(2) the nature and extent of the treatment relationship; (3) the evidence with which the physician

supports his opinion; (4) the consistency of the opinion; and (5) whether the physician is a specialist

in the area in which he is rendering an opinion. 20 C.F.R. § 404.1527.  Social Security Ruling 96-2p

provides that an ALJ must give specific reasons for the weight given to a treating physician's medical

opinion.  SSR 96-2p.

         The ALJ's decision to give some weight to Dr. Rollins' opinion is supported by substantial

evidence and correct under controlling law. Contrary to Plaintiff's argument, the ALJ properly

considered Dr. Rollins' opinion pursuant to the applicable law, adopted the majority of Dr. Rollins'

restrictions on Plaintiff's ability to work, and gave valid reasons for discounting Dr. Rollins' opinion

that Plaintiff would miss more than four days a month from work.  The ALJ stated that he discounted

this portion of the opinion because Dr. Rollins failed to articulate any basis for this restriction, there

was no objective medical evidence to support this part of the opinion (the ALJ gave examples of

medical records which contradicted this portion of Dr. Rollins' opinion) and Plaintiff's activities of

daily living.  The ALJ also noted that although the predicate for this part of Dr. Rollins' opinion

appeared to be Plaintiff's pain, Dr. Rollins noted on November 3, 2010 that he was giving Plaintiff

his last prescription for pain medications and Plaintiff would not need any further refills.  He also

discounted this part of Dr. Rollins' opinion because Plaintiff reported that he was doing pretty well

in December 2009 and that his pain level had been better since his last surgery, and because records

after Plaintiff's accident illustrated healing and reduced pain.  Tr. 27.

         C.    RFC

              Plaintiff alleges that the ALJ's RFC assessment is not supported by substantial

evidence.  He argues that the ALJ summarily determined that he was capable of performing the

requirements of sedentary work and summarily assessed his ability, but failed to include specific references to the medical evidence; ignored treating physician opinions; and failed to determine and state whether Plaintiff could perform the demands of this work on a regular, continuing basis.  The Commissioner contends that the ALJ's RFC findings is supported by substantial evidence, the ALJ properly discussed the medical evidence, and the ALJ provided detailed explanations of how the medical evidence supported the RFC finding.

The ALJ's RFC assessment should be based on all the relevant evidence. 20 C.F.R. § 404.1545(a).  Social Security Ruling 96-8p requires that the RFC assessment "include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)."  The RFC must "first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis...."  SSR 96-8p.  The ALJ must discuss the claimant's ability to work in an ordinary work setting on a regular work schedule.  Id.

The ALJ's RFC determination is supported by substantial evidence including the opinion of Dr. Rollins (other than the portion about absenteeism), the opinion of State agency physician Dr. Chandler, Plaintiff's activities of daily living, and objective medical evidence.  The ALJ specifically discussed the relevant evidence (see Tr. 23-38) and attributed great weight to Dr. Rollins' opinion that Plaintiff was capable of working eight hours a day, standing for one hour, walking for one hour, and sitting for six hours in an eight-hour workday.  This supports the ALJ's conclusion that Plaintiff was capable of performing a reduced range of sedentary work on a sustained basis.  Tr. 26-27, 358.  The ALJ also stated that he adopted the non-exertional functional limitations identified by Dr. Chandler (a state agency reviewing physician) into his RFC findings.  See Tr. 26, 107-109.   The

18

ALJ's decision is supported by the opinions of this state agency physician.  See 20 C.F.R. §§ 404.1527(e)(2) and 416.927(e)(2); SSR 96-6p ("Findings of fact made by State agency ... [physicians ]... regarding the nature and severity of an individual's impairments must be treated as expert opinion of non-examining sources at the [ALJ] and Appeals Council level of administrative review.").  The ALJ also considered whether Plaintiff was capable of performing work on a regular and continuing basis by discussing and reasonably discounting Dr. Rollins' opinion regarding absenteeism, as discussed above.

    D.    Pain/Credibility

         Plaintiff alleges that the ALJ        failed  to give proper consideration to the vocational consequences of his pain as required by SSR 96-7p.  He also argues that the ALJ failed to properly make a credibility determination as required by SSR 96-7p and Hammond v. Heckler, 765 F.2d 424, 426 (4th Cir. 1985).  He argues that the ALJ never explained why his activities were inconsistent with a disability finding. The Commissioner contends that the ALJ appropriately considered Plaintiff's subjective pain symptoms when making his disability determination and the ALJ reasonably determined that Plaintiff's testimony was not entirely credible.

    In assessing credibility and complaints of pain, the ALJ must: (1) determine whether there is objective evidence of an impairment which could reasonably be expected to produce the pain alleged by a plaintiff and, if such evidence exists, (2) consider a plaintiff's subjective complaints of pain, along with all of the evidence in the record.  See Craig v. Chater, 76 F.3d at 591-92; Mickles v. Shalala, 29 F.3d 918 (4th Cir. 1994). Although a claimant's allegations about pain may not be discredited solely because they are not substantiated by objective evidence of the pain itself or its severity, they need not be accepted to the extent they are inconsistent with the available evidence,

19

including objective evidence of the underlying impairment, and the extent to which the impairment can reasonably be expected to cause the pain the claimant alleges he suffers. A claimant's symptoms, including pain, are considered to diminish his or her capacity to work to the extent that alleged functional limitations are reasonably consistent with objective medical and other evidence. 20 C.F.R. §§ 404.1529(c)(4) and 416.929(c)(4).

Contrary to Plaintiff's argument, the ALJ properly considered Plaintiff's subjective pain symptoms throughout his evaluation of the medical evidence and his determination of Plaintiff's RFC. The ALJ specifically stated that in making his RFC finding he "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 404.1529 and 416.929 and SSRs 96-4p and 96-7p." Tr. 23. He discussed Plaintiff's pain symptoms which were reported in the medical records (see Tr. 24-26), as well as Plaintiff's testimony at the administrative hearing (Tr. 23). See Tr. 22-28.

The ALJ also properly applied the two-part test as outlined above. The ALJ found, at step one, that Plaintiff's medically determinable impairments could reasonably be expected to produce the alleged symptoms. Tr. 23. At step two, the ALJ found that Plaintiff's statements concerning the intensity, persistence, and limiting effects of his symptoms were not credible to the extent they were inconsistent with an RFC for a reduced range of sedentary work. Id. The ALJ properly considered the medical and nonmedical evidence and gave specific reasons for discounting Plaintiff's credibility.

The ALJ reasonably found that Plaintiff's subjective pain complaints were inconsistent with objective medical evidence in the record. See 20 C.F.R. § 404.1529(c)(2)("objective medical evidence...is a useful indicator to assist us in making reasonable conclusions about the intensity and

persistence of your symptoms and the effect those symptoms, such as pain, may have on your ability to work."). He specifically noted that an arthroscopic knee procedure in May 2010 did not reveal any objective basis for Plaintiff's pain complaints, Plaintiff's femur healed sufficiently such that he could perform straight leg raises in July 2010, Plaintiff's right knee did not display any laxity in November 2010 and December 2010, physical examination findings were largely normal in November and December 2010, and x-rays in December 2010 revealed that Plaintiff's femur was healed. See Tr. 25-27, 330, 353, 355, 365, 366.

The ALJ also found (Tr. 26-27) that Plaintiff's subjective complaints were largely inconsistent with the medical source opinions of record. See 20 C.F.R. § 404.1529(c)(4)(an ALJ must consider whether there are conflicts between a claimant's statements and statements by treating or non-treating medical sources). This also supports the ALJ's findings. The ALJ specifically noted that, in contrast to Plaintiff's testimony that he was unable to work, Dr. Rollins opined that Plaintiff was capable of working eight hours per day, including standing for one hour, walking for one hour, and sitting for six hours. Tr. 26-28, 358. Plaintiff's allegations of disability were also noted to be inconsistent with Dr. Chandler's opinion that Plaintiff was capable of performing a reduced range of light work. Tr. 26-28, 106-109. The ALJ pointed out that the medical evidence contained several comments from Plaintiff's treating sources that suggested Plaintiff was overstating the severity of his pain. See Jones v. Callahan, 122 F.3d 1148, 1152 (8th Cir.1997) (finding an ALJ did not err in considering evidence that a claimant exaggerated the severity of his symptoms as a factor in weighing a claimant's credibility). The ALJ specifically noted that after Plaintiff's arthroscopic knee scope in May 2010, one of Plaintiff's treating physicians noted that it was "[h]ard to understand why [Plaintiff] is having this much discomfort" because the arthroscopic surgery "did not find all that much wrong." Tr. 27,

330. As noted by the ALJ, Dr. Rollins wrote in September 2010 that Plaintiff was requesting more pain medication which was "the same line that we have heard over and over in this gentleman." Tr. 27, 348. Additionally, in November 2010 Dr. Rollins wrote that he was giving Plaintiff his last prescription for pain medications and Plaintiff should not need any further refills. Tr. 27, 356.

The ALJ also properly discounted Plaintiff's subjective allegations based on Plaintiff's daily activities which included at least some ability to cook, do dishes, do laundry, fold clothes, clean the kitchen, drive a car, visit friends and relatives, and go shopping. See Tr. 27, 69, 70, 76-77, 78. Such activities are generally inconsistent with the severity of limitations and pain alleged by Plaintiff. See Mastro, 270 F.3d at 179 (claimant's daily activities undermined her subjective complaints).

## **CONCLUSION**

Based on the foregoing, it is RECOMMENDED that the Commissioner's decision be AFFIRMED.

Joseph R. McCrorey
United States Magistrate Judge

April 15, 2013
Columbia, South Carolina